No. 17,683.

## Stephens et al. *v.* Kaga.

Receiver.—*To Harvest and Sell Crops.—New Trial as of Right.—Ejectment.*—A receiver to harvest and sell crops will not be appointed pending the statutory new trial in an ejectment action, as the undertaking to pay all costs and damages which shall be recovered in the action, required by section 1076, R. S. 1894, as a condition of a new trial, affords an adequate remedy at law if damages for conversion of the crops would be recoverable in the action, and, if not recoverable, the remedy would be improper.

Practice.—*Motion.—Procedure.*—A mover, under a notice of a motion to be made at chambers on a day and hour specified, or as soon thereafter as counsel can be heard, must proceed within such reasonable time after the time fixed in the notice and within the convenience of the judge as will enable his adversary to be present and be heard without attending through protracted periods of delay and uncertainty.

From the Harrison Circuit Court.

*C. W. Cook* and *W. Ridley,* for appellants.

*N. R. Peckinpaugh* and *H. M. Peckinpaugh,* for appellee.

Hackney, J.—This appeal is from an order by the judge of the circuit court, entered in vacation, appointing a receiver to take charge of, harvest and sell the crops growing upon certain lands in the possession of the appellants.

The petition upon which such appointment was made, alleged that the appellee, the petitioner, had theretofore become the purchaser of, and had received a deed for, said lands, upon a sale under a decree of foreclosure of mortgage; that he had instituted, and prosecuted to judgment, an action against the appellants in ejectment;

that the appellants had, in said ejectment action, obtained a new trial as a matter of right; that said crops had been sown and had matured after the appellee had become the purchaser of said lands; that the appellants were insolvent, and had no defense to said ejectment action, but were delaying a trial thereof to enable them to gather and convert to their own use said crops, which they were then about to do, to the appellee's damage, in the sum of three hundred dollars.

On the 13th day of June, 1895, the appellants were personally served with notice that the appellee would, "on the 20th day of June, 1895, at 10 o'clock A. M., or as soon thereafter as counsel could be heard," apply to the judge of said court, in chambers, for the appointment of a receiver, the notice being accompanied by a copy of the petition. On the 21st day of June, 1895, the application not having been heard on the 20th, because of the absence of the judge the said petition was presented to, and heard by, said judge, over the written objection of the appellants, that no jurisdiction existed to entertain such petition on that day, without further notice to the appellants.

On such hearing the facts alleged in the petition were established by affidavits, and by the proceedings and papers in said ejectment action, which included a bond executed by appellants with surety, for the payment of all costs and damages to be recovered against them in said action.

The appellants claim error in the rulings of the lower court, in two respects: (1) In assuming jurisdiction to appoint a receiver upon a day subsequent to the day of which notice was given, of the application in vacation, for such appointment; and (2) that it appeared, inferentially from the petition, and directly from the evidence, that the appellee had an adequate remedy at law,

for any losses to be sustained in the conversion of crops, upon the bond of appellants so executed in the ejectment suit.

(1) Notice in proceedings of the character here involved cannot be given, with reference to the time of the proposed hearing, with that certainty that is possible with reference to stated terms of court, prescribed by law and continuing through definite periods, and which litigants are presumed to attend, and to observe the course of proceeding throughout such periods. Here, the return time of the notice must involve uncertainty, and admit of reasonable variation to meet the varying demands upon the time of the judge who is to hear the application. Of course, there should be no rule enabling a litigant to give notice to his adversary, of a hearing at a particular time, and then to so delay his application and to so present it, as to require the adversary to stand guard constantly at the place of hearing, to avoid an advantage being taken of his interests. The correct rule, we think, is that which requires the moving party to proceed within such reasonable time after the time fixed in the notice, and within the convenience of the judge, as will enable his adversary to be present and be heard, without the unreasonable burden of attending through protracted periods of delays and uncertainty. If he so delays in presenting his application, as to cast such burden upon his adversary, he should be deemed to have waived his right to proceed under the notice given, and to have assumed the duty of giving another notice. Here, the delay was but for a day, and that from no fault of the moving party, but because of the engagements of the judge, which prevented him from being present at the time specified in the notice. This delay was not unreasonable, and did not deprive the appellants of an opportunity to be present, nor require of

them a burdensome attention to the movements of the appellee in seeking the judge and presenting the application. In this conclusion we have left out of view the fact that on the 20th day of June telegrams passed between appellee's counsel and the judge, from which it was learned that the proceeding would be heard the next day, and that counsel, who represented the appellants in the ejectment action, to which said application was auxiliary, were shown the telegrams, and thereby received a knowledge of the course of the proceeding, which enabled them, on the next day, to be present, as they were, and to have been heard with every preparation made for a hearing on the day previous. We conclude, therefore, that the appellee acted upon his notice with reasonable promptness, and with the utmost fairness to the appellants and their legitimate interests.

(2) The appointment of a receiver to gather and sell the crops, if appellants succeed in the ejectment action, will deprive them of their property rights in such crops and will substitute therefor a claim against the receivership for such balance of the proceeds of sale as may remain after the payment of the expenses of harvesting and marketing, and the costs of receivership, including receiver's fees, attorneys' fees, court costs, etc. Such rights should not be so embarrassed and its value diminished unless it may be made to appear clearly that if the appellee shall ultimately succeed in the principal action, he will, should a receiver be denied, suffer the loss of a like property right in such crops with no prompt, efficient and adequate remedy for the recovery of the value to him of such crops. On the one hand, it is claimed that, though appellants may be insolvent and may intend to convert the crops, the bond which they gave in the principal case takes the place of their solvency and makes

good any claim which the appellee may be entitled to enforce against them for the conversion of such crops. On the other side, it is urged that the bond cannot be held to cover liabilities arising subsequent to its execution and not involved in the issue at the time of its execution and that the appellee is not required to suffer the conversion but is entitled to the specific property rather than to a recovery of damages. In the absence of the bond, if appellants were insolvent, we think there could be no reasonable doubt but that a receiver should have been appointed, if the pleadings were so framed as to present the question of damages. R. S. 1894, section 1236; *Bitting* v. *Ten Eyck*, 85 Ind. 357; *Galloway* v. *Campbell*, 142 Ind. 324. It is asserted on behalf of the appellants and is conceded for the appellee, that equity will not permit the appointment of a receiver in any case where the party applying has a clear and effective legal remedy for such damages as he alleges he will sustain by the failure to appoint such receiver. Of this proposition there can be no doubt. It then remains to determine whether such remedy existed in favor of the appellee. Under the former rule (2 G. & H. 252, section 601), a new trial as a matter of right was allowed to the unsuccessful party in an ejectment suit "upon the payment of all costs, and of the damages, if the court so directed." By the present rule (R. S. 1894, section 1076), the new trial is given "on the applicant giving an undertaking, with surety to be approved by the court or clerk, that he will pay all costs and damages which shall be recovered against him in the action." It is manifest that under the old rule, where the damages to the successful party have materially increased upon the second trial, injustice would result from the payment only of the costs of the first trial and, if the court so

held, the damages first assessed.   By the present rule
no such injustice is possible.   The increased costs and
damages are secured by the bond and cannot be affected
by the insolvency of the party.   We may properly pre-
sume that the rule was changed for the purpose of attain-
ing this just end.   If, therefore, the conversion of the
crops by the appellants between the first and the second
trials had the effect to increase the appellee's recoverable
damages, if successful on the second trial, such damages
were secured by the bond without regard to the solvency
of the appellants.   If, however, such conversion would
not admit of a recovery by the appellee, in case of the
successful termination of his action it would seem to fol-
low, as a necessary conclusion, that a receiver should
not be allowed.

The appointment was sought, as we have shown, as a
remedy auxiliary to the main action, and upon the theory
of a right of recovery in such action for the conversion
of the crops.   If no such recovery were possible the
remedy would be improper, and, if possible, the bond
would give security against the insolvency of the appel-
lants.   Counsel for appellee suggest that their client
would not be required to stand by and suffer the sale of
his crops, but is entitled to such remedy as will secure
to him the identical property rather than a recovery in
damages.   The theory of his application for the appoint-
ment was, not to secure to him or to his adversaries the
identical property, but  to cause the conversion of the
property into cash, to be held to await the final disposi-
tion of the principal cause.

A court of equity regarding sacredly the rights of
both parties would have the same duty to protect the
party in possession of the crops in his right to the iden-
tical property as to protect the party out of possession
in such rights.

We conclude, therefore, that, even if, in the absence of a bond, a receiver could properly have been appointed, no such right existed in this case. The order of the judge, appointing such receiver, is reversed with instructions to deny the appellee's petition.

Filed November 8, 1895.